UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH LYNCH,

       Plaintiff,                                  Hon. Wendell A. Miles

v.                                                      Case No. 1:06-CV-323

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
_____/

## REPORT AND RECOMMENDATION

This is an action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review a final decision of the Commissioner of Social Security denying Plaintiff's claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under Titles II and XVI of the Social Security Act. Section 405(g) limits the Court to a review of the administrative record, and provides that if the Commissioner's decision is supported by substantial evidence, it shall be conclusive.

The Commissioner determined that Plaintiff is not disabled as defined by the Act. Pursuant to 28 U.S.C. § 636(b)(1)(B), authorizing United States Magistrate Judges to submit proposed findings of fact and recommendations for disposition of social security appeals, the undersigned recommends that the Commissioner's decision be **affirmed**.

## **STANDARD OF REVIEW**

The Court's jurisdiction is confined to a review of the Commissioner's decision and of the record made in the administrative hearing process. *See Willbanks v. Sec'y of Health and Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health and Human Services*, 889 F.2d 679, 681 (6th Cir. 1989).

The Court may not conduct a de novo review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they are supported by substantial evidence. *See* 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Dep't of Health and Human Services*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health and Human Services*, 735 F.2d 962, 963 (6th Cir. 1984).

As has been widely recognized, the substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This

standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

## PROCEDURAL POSTURE

Plaintiff was 47 years of age at the time of the ALJ's decision. (Tr. 14). She successfully completed high school and worked previously as an assembler, housekeeper, and packer. (Tr. 14, 139, 144, 163).

Plaintiff applied for benefits on November 19, 2002, alleging that she had been disabled since September 1, 2002, due to back pain, asthma, allergies, and stress. (Tr. 93-97, 138). Plaintiff's application was denied, after which time she requested a hearing before an Administrative Law Judge (ALJ). (Tr. 27-91). On November 30, 2005, Plaintiff appeared before ALJ William King, with testimony being offered by Plaintiff and vocational expert, David Holwerda. (Tr. 351-406). In a written decision dated January 27, 2006, the ALJ determined that Plaintiff was not disabled. (Tr. 13-23). The Appeals Council declined to review the ALJ's decision, rendering it the Commissioner's final decision in the matter. (Tr. 4-6). Plaintiff subsequently appealed the matter in this Court pursuant to 42 U.S.C. § 405(g).

## MEDICAL HISTORY

Plaintiff has not challenged the ALJ's finding that she is *physically* capable of performing work which exists in significant numbers. Rather, Plaintiff has challenged the ALJ's conclusion that her mental impairments are less than disabling in severity. The Court's discussion

of the medical evidence will, therefore, emphasize that portion of the medical record which is relevant to the issues asserted by Plaintiff in her appeal.

In 1992, Plaintiff underwent a laminectomy to repair a herniated disc at L5-S1. (Tr. 216). On August 26, 2002, Plaintiff underwent an "L4-5 laminotomy with medial facetectomy, foraminotomy, and diskectomy" performed by Dr. John Keller. (Tr. 210).

On February 20, 2003, Plaintiff was examined by Chris Clatterbuck, Ph.D. (Tr. 263-68). Plaintiff reported that she was experiencing depression, irritability, restlessness, and difficulty concentrating. (Tr. 264-65). Plaintiff reported that she was not experiencing panic attacks, manic symptomatology, or thought disorders. (Tr. 265). Plaintiff's responses were "intelligible and fluent" and her quality of voice was "clear." Plaintiff's thoughts were "coherent and goal-directed" and her affect was "of full range and appropriate in speech and thought content." The doctor characterized Plaintiff's mood as euthymic.[1] *Id.* Plaintiff did exhibit "mild" impairment in attention and concentration due to "mild-to-moderate" depressive symptoms. (Tr. 266). Plaintiff reported that she had never been hospitalized for psychiatric treatment, but had treated with a counselor in 2002 for a "few visits." (Tr. 263).

Plaintiff reported that she enjoys reading and writing, doing crafts, and watching television. (Tr. 267). Plaintiff reported that she last worked in December 2002 when she worked as a solicitor for a telephone distribution company. (Tr. 263). Plaintiff reported that she left this job because it "ended" not because she was unable to perform its requirements. (Tr. 263).

---

[1] Euthymic is a medical term used to describe a normal psychological state, neither elated nor depressed. *See* Euthymic, *available at* http://www.answers.com/topic/euthymic (last visited on May 16, 2007).

Plaintiff was diagnosed with "mild to moderate" major depressive disorder without psychotic features. (Tr. 267). Dr. Clatterbuck concluded that Plaintiff should seek psychiatric care "to assist her with adjustment and loss issues with respect to her physical limitations." (Tr. 268). The doctor characterized Plaintiff's prognosis as "fair" and noted that she "could certainly benefit from formal vocational training." *Id.*

On April 4, 2003, Dr. W. M. Van Houten completed a Psychiatric Review Technique form regarding Plaintiff's mental limitations. (Tr. 274-87). Determining that Plaintiff suffered from major depression, the doctor concluded that Plaintiff satisfied the Part A criteria for Section 12.04 (Affective Disorders) of the Listing of Impairments. (Tr. 275-83). The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for this particular impairment. (Tr. 284). Specifically, the doctor concluded that Plaintiff suffered mild restrictions in the activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and never experienced episodes of decompensation. *Id.*

Dr. Van Houten also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 270-72). Plaintiff's abilities were characterized as "moderately limited" in four categories. With respect to the remaining 16 categories, however, the doctor reported that Plaintiff was either "not significantly limited" or that there existed "no evidence of limitation in this category." *Id.*

On May 21, 2003, Plaintiff was examined by Dr. June Hillelson. (Tr. 288-91). Plaintiff reported that she was experiencing intermittent back pain which radiated down her right extremity. (Tr. 288). Plaintiff reported that she was unable to walk farther than three blocks, sit for

longer than 30 minutes, or stand for longer than 10 minutes. (Tr. 289). Plaintiff exhibited 5/5 motor strength and was able to walk without difficulty. (Tr. 290). Romberg testing was negative.[2] Plaintiff was able to flex to 80 degrees and extend to 30 degrees. She exhibited "normal" rotation and lateral flexion. *Id.* The doctor determined that due to Plaintiff's lower back pain "she probably should not be standing, walking or bending to any significant degree." (Tr. 291). Dr. Hillelson concluded that Plaintiff "certainly could perform activities of a sedentary type where she could sit and then get up and walk around." *Id.*

On November 14, 2005, Plaintiff participated in a consultive examination conducted by Richard King, Ed.D. (Tr. 340-47). Plaintiff reported that she was experiencing "memory loss difficulties," depression, and anxiety. (Tr. 340, 342). Plaintiff further reported, however, that "her depression problems have never been significant." (Tr. 342). Plaintiff participated in intelligence testing, the results of which revealed that she possesses a verbal IQ of 75, a performance IQ of 86, and a full-scale IQ of 78. (Tr. 342). Plaintiff participated in the Beck Depression Inventory-2, the results of which were "consistent with depressive disorder." (Tr. 343). Dr. King concluded that Plaintiff experiences depression and "limited stress tolerance." (Tr. 344). Plaintiff was diagnosed with major depressive disorder and pain disorder. Her GAF score was rated as 50.[3] Dr. King also determined that Plaintiff "appears to be a poor candidate for treatment intervention related to emotional dysfunctions." (Tr. 344-45).

---

[2] Romberg test is a neurological test designed to detect poor balance. *See* Romberg Test, available at http://www.mult-sclerosis.org/RombergTest.html (last visited on May 11, 2007). The patient stands with her feet together and eyes closed. The examiner will then push her slightly to determine whether she is able to compensate and regain her posture. *Id.*

[3] The Global Assessment of Functioning (GAF) score refers to the clinician's judgment of the individual's overall level of functioning. American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 30 (4th ed. 1994) (hereinafter DSM-IV). A score of 50 indicates that the individual is experiencing "serious symptoms or any serious impairment in social, occupational, or school functioning." *Id.*

Dr. King also completed a Mental Residual Functional Capacity Assessment form regarding Plaintiff's limitations in 20 separate categories encompassing (1) understanding and memory, (2) sustained concentration and persistence, (3) social interaction, and (4) adaptation. (Tr. 346-47). Plaintiff's abilities were characterized as "markedly limited" in five categories and "moderately limited" in eight categories. With respect to the remaining seven categories the doctor reported that Plaintiff was "not significantly limited." *Id.*

## ANALYSIS OF THE ALJ'S DECISION

### A. Applicable Standards

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[4] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1420(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining his residual functional capacity. *See* 20 C.F.R. §§ 404.1545, 416.945.

---

[4]1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. 404.1520(b));

2.  An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. 404.1520(c));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. 404.1520(d));

4.  If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. 404.1520(e));

5.  If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. 404.1520(f)).

**B. The ALJ's Decision**

The ALJ determined that Plaintiff suffers from the following severe impairments: (1) generalized pain disorder; (2) major depressive disorder; (3) personality disorder; and (4) intellectual functioning in the upper limits of the borderline range. (Tr. 18). The ALJ concluded that these impairments, whether considered alone or in combination, failed to satisfy the requirements of any impairment identified in the Listing of Impairments detailed in 20 C.F.R., Part 404, Subpart P, Appendix 1. (Tr. 19). The ALJ determined that while Plaintiff was unable to perform her past relevant work, there existed a significant number of jobs which she could perform despite her limitations. (Tr. 19-22). Accordingly, the ALJ concluded that Plaintiff was not disabled as defined by the Social Security Act.

**1. The ALJ's Decision is Supported by Substantial Evidence**

Plaintiff bears the burden of demonstrating her entitlement to benefits, and she can satisfy her burden by demonstrating that her impairments are so severe that she is unable to perform her previous work, and cannot, considering her age, education, and work experience, perform any other substantial gainful employment existing in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A); *Cohen*, 964 F.2d at 528.

As noted above, the Commissioner has established a five-step disability determination procedure. While the burden of proof shifts to the Commissioner at step five, Plaintiff bears the burden of proof through step four of the procedure, the point at which her residual functioning capacity (RFC) is determined. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Walters v.*

*Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997) (ALJ determines RFC at step four, at which point claimant bears the burden of proof).

With respect to Plaintiff's residual functional capacity, the ALJ determined that Plaintiff retained the capacity to perform sedentary work[5] subject to the following limitations: (1) she can only occasionally perform pushing or pulling with her right upper or right lower extremities; (2) she requires a sit/stand option; (3) she can use stairs; (4) she can only occasionally bend; (5) she can only occasionally reach overhead with her right upper extremity; (6) she cannot work near hazards such as heights; (7) she can only occasionally interact with co-workers; and (8) she cannot interact with the general public. (Tr. 20). After reviewing the relevant medical evidence, the Court concludes that the ALJ's determination as to Plaintiff's RFC is supported by substantial evidence.

The ALJ determined that Plaintiff was unable to perform her past relevant work, at which point the burden of proof shifted to the Commissioner to establish by substantial evidence that a significant number of jobs exist in the national economy which Plaintiff could perform, her limitations notwithstanding. *See Richardson*, 735 F.2d at 964.

While the ALJ is not required to question a vocational expert on this issue, "a finding supported by substantial evidence that a claimant has the vocational qualifications to perform <u>specific</u> jobs" is needed to meet the burden. *O'Banner v. Sec'y of Health and Human Services*, 587 F.2d 321, 323 (6th Cir. 1978) (emphasis added). This standard requires more than mere intuition or conjecture by the ALJ that the claimant can perform specific jobs in the national economy. *See Richardson*, 735 F.2d at 964. Accordingly, ALJs routinely question vocational experts in an attempt

---

[5] Sedentary work involves lifting "no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567. Furthermore, while sedentary work "is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.*

to determine whether there exist a significant number of jobs which a particular claimant can perform, her limitations notwithstanding. Such was the case here, as the ALJ questioned vocational expert David Holwerda.

The vocational expert testified that there existed approximately 7,100 jobs which an individual with Plaintiff's RFC could perform, such limitations notwithstanding. (Tr. 400-03). This represents a significant number of jobs. *See Born v. Sec'y of Health and Human Services*, 923 F.2d 1168, 1174 (6th Cir. 1990) (evidence that there existed 2500 jobs "within the local region" represents a significant number); *Hall v. Bowen*, 837 F.2d 272, 274 (6th Cir. 1988) (evidence that there existed 1350-1800 jobs "in the region" of the claimant's residence represents a significant number).

a.   The ALJ Properly Assessed the Medical Evidence

On November 14, 2005, Plaintiff participated in a consultive examination conducted by Richard King, Ed.D. (Tr. 340-47). Plaintiff asserts that the ALJ failed to accord sufficient weight to the opinions expressed by Dr. King.

Plaintiff participated in intelligence testing, the results of which revealed that she possesses a verbal IQ of 75, a performance IQ of 86, and a full-scale IQ of 78. (Tr. 342). She participated in a depression inventory, the results of which were "consistent with depressive disorder." (Tr. 343). Dr. King diagnosed Plaintiff as experiencing major depressive disorder and pain disorder. (Tr. 344). Dr. King concluded that Plaintiff "appears to be a poor candidate for treatment intervention related to emotional dysfunctions." (Tr. 344-45). Plaintiff also reported, however, that "her depression problems have never been significant." (Tr. 342).

First, because Dr. King examined Plaintiff on only one occasion his opinion is entitled to no special deference. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994); *Atterberry v. Secretary of Health and Human Services*, 871 F.2d 567, 571-72 (6th Cir. 1989). Moreover, Dr. King did not conclude that Plaintiff was disabled, but instead observed that she experiences pain, depression, and limited stress tolerance, factors which are adequately accommodated by the ALJ's RFC determination. As for the doctor's conclusion that Plaintiff was "a poor candidate for treatment intervention," the Court notes that Plaintiff herself reported to Dr. King that "her depression problems have never been significant."

The ALJ considered Dr. King's opinions, but accorded "little weight" to such. In making this determination the ALJ noted the following:

> Dr. King's proposed degree of functional limitation is not supported by the complete lack of almost any psychological or mental health treatment during the period in question (since August 2002). Moreover, his comment that the claimant was a poor candidate for treatment intervention seems to be a somewhat odd observation to make after only an initial consultation, in view of the lack of such treatment of any meaningful duration in the past. Likewise, the GAF rating, while considered, has little probative value because it represents only a one-time estimation without the benefit of longitudinal observations.

(Tr. 20).

The ALJ properly relied on the opinions and findings of Plaintiff's other care providers, none of whom expressed the opinion that Plaintiff is impaired to an extent beyond that recognized by the ALJ. In sum, the ALJ properly accorded little weight to Dr. King's opinions as such are contradicted by significant medical evidence.

b.  The ALJ Properly Relied on the Vocational Expert's Testimony

Plaintiff asserts that the ALJ relied upon the response to an inaccurate hypothetical question.  While the ALJ may satisfy his burden through the use of hypothetical questions posed to a vocational expert, such hypothetical questions must accurately portray the claimant's physical and mental impairments.  *See Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

The hypothetical question which the ALJ posed to the vocational expert simply asked whether there existed jobs which an individual could perform consistent with Plaintiff's limitations, to which the vocational expert indicated that there existed approximately 7,100 such jobs.  Because there was nothing improper or incomplete about the hypothetical questions he posed to the vocational expert, the ALJ properly relied upon his response thereto.

## CONCLUSION

For the reasons articulated herein, the undersigned concludes that the ALJ's decision adheres to the proper legal standards and is supported by substantial evidence.  Accordingly, it is recommended that the Commissioner's decision be **affirmed**.

OBJECTIONS to this report and recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice.  28 U.S.C. § 636(b)(1)(C).  Failure to file objections within the specified time waives the right to appeal the District Court's order.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Date:  June 22, 2007              /s/ Ellen S. Carmody
                                  ELLEN S. CARMODY
                                  United States Magistrate Judge